UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASA MCCALL,

Plaintiff,

v.

THE DISTRICT OF COLUMBIA, *et al.*,

Defendants.

Civil Action No. 17-1325 (JEB)

MEMORANDUM OPINION

Plaintiff Asa McCall tried to register a used car with the District of Columbia Department of Motor Vehicles. When the DMV conditioned that registration on his paying fines for outstanding traffic violations he believed were not his, McCall embarked on a series of steps, both here and in Maryland, to clear his record. Unhappy with those proceedings, he brought this *pro se* action against D.C., Maryland, and various agencies, seeking changes in traffic-violation policies, an increase in reporting requirements, a cleansing of his record, and money damages nearly a million times larger than the total fine in question. The District Defendants now move to dismiss, arguing that the agencies lack the capacity to be sued, Plaintiff's constitutional claims are defective, and the Court should not exercise supplemental jurisdiction over his local causes of action. The Court concurs and will grant the Motion.

I.      Background

The Court, as it must at this juncture, sets out the facts as provided in the Complaint. On July 8, 2014, Plaintiff went to the District of Columbia DMV to register a recently purchased used vehicle. See Compl., ¶ 13. McCall was rebuffed because his driving record indicated he had outstanding parking and speeding violations that had not yet been paid. Id. The DMV

1

explained that, to resolve the issue, McCall had two options: he could simply pay the fines due or he could contest some or all of the violations by obtaining documentation from the Maryland Motor Vehicle Administration (MVA) that the vehicle in question was not registered in his name at the time the tickets were issued. Id., ¶¶ 13-14. Choosing the latter route, he successfully obtained some documentation to that effect at the MVA in Glen Burnie, Maryland, and presented those documents to the Adjudication Department of the DC DMV. Id. In response, an employee of the DMV removed three of the violations from Plaintiff's record and excused payment thereon. Id., ¶ 14; see also ECF No. 1, Exh. A (DMV Tickets) (listing him liable for only three tickets). The three that remained were: 1) a stopping violation during rush hour in the amount of $100, with $105 in late penalties, from October 13, 2004; 2) a speeding ticket in the amount of $50, with $50 in late penalties, from February 1, 2005; and 3) a residential-parking violation in the amount of $30, with $35 in late penalties, from February 10, 2005. See DMV Tickets. Plaintiff protested having to pay these three and asked the DMV employee for a hearing. See Compl., ¶ 14. A supervisor refused his request, stating, "[T]here is nothing you can do, you just have to pay!" Id.

McCall responded by filing this action. He named as Defendants the DMV, the District's Department of Public Works, the Metropolitan Police Department, D.C.'s Department of Transportation, the District of Columbia itself, the Maryland MVA, and the State of Maryland. See Compl. at 1. The Complaint lists four counts: I) the fraudulent making, altering, and using of false documents; II) the negligent creation, issuance, and use of false documents and the negligent training of employees; III) a violation of Plaintiff's Fourteenth Amendment rights; and IV) a violation of Plaintiff's Fifth Amendment rights. Id., ¶¶ 15-27.

As relief, Plaintiff requests a diverse list of actions from this Court: 1) removing the violations from his record; 2) establishing a statute of limitation of six years for all traffic violations in the District; 3) extending the time period a person has to respond to traffic violations to three times what it currently is; 4) prohibiting the District from automatically entering guilty verdicts for a failure to appear; 5) establishing a uniform protocol for issuing traffic violations; 5) requiring that a detailed report of revenue and spending of fine money from traffic violations be made public; and 6) awarding Plaintiff $82 million from each Defendant named in the lawsuit, amounting to a grand total of $574 million in damages. Id., ¶ 28. The State of Maryland, on behalf of itself and the MVA, filed a separate Motion to Dismiss, to which McCall failed to respond in a timely fashion. This resulted in the dismissal of those Defendants. See Minute Order of Oct. 10, 2017. The District Defendants have now filed their own Motion to Dismiss.

## II.     Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted." In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S.

3

544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation omitted). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharma. Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Venetian Casino Resort, L.L.C. v. EEOC, 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case – a dismissal under Rule 12(b)(1) on ripeness grounds – the court may consider materials outside the pleadings"); Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

**III. Analysis**

The District Defendants offer four principal contentions in moving to dismiss: 1) the District's agencies are *non sui juris*; 2) the Fourteenth Amendment does not apply to the District; 3) the District has no Fifth Amendment liability in this case; and 4) the Court should not exercise supplemental jurisdiction over the extant state-law claims. The Court addresses each in turn.

A. Capacity to be Sued

The Motion to Dismiss first argues that constituent agencies of the District of Columbia – namely, the DMV, DPW, MPD, and DOT – cannot be sued in their own capacity. This Circuit has widely accepted that contention in the absence of explicit statutory authority to sue the agency. See Argote v. D.C. Metropolitan Police Dep't, No. 15-303, 2016 WL 107916, at *2 (D.D.C. Jan. 8, 2016) (compiling cases that have held different District of Columbia agencies *non sui juris*); see also Amobi v. D.C. Dep't of Corrections, 755 F.3d 980, 987 n.5 (D.C. Cir. 2014) (noting DOC is a *non sui juris* subordinate government agency); Simmons v. D.C. Armory Board, 656 A.2d 1155, 1157 (D.C. 1995) (noting agencies can be granted explicit power "to sue and be sued"). As the agencies named in the Complaint are not granted the capacity to be sued, they will be dismissed from this action, leaving only the District itself as a Defendant.

B. Fourteenth Amendment

Although not expressly pled, Plaintiff's Fourteenth and Fifth Amendment claims here fall squarely under 42 U.S.C. § 1983, which permits an individual to bring a civil action for the deprivation of his constitutional rights. McCall alleges that his equal-protection and due-process rights as provided by the Fourteenth Amendment were violated when the District denied him a hearing on his concerns and enforced "false documents" against him. See Compl., ¶¶ 25-26. The city correctly responds by pointing out that Plaintiff has no ability to assert such a

constitutional claim against it. Quite simply, "[t]he Fourteenth Amendment is not applicable in the District of Columbia." Neild v. District of Columbia, 110 F.2d 246, 256 (D.C. Cir. 1940). This effectively halts any inquiry into Count III, although the Court will consider his due-process claims in its discussion of the Fifth Amendment.

    C.  Fifth Amendment

Under the umbrella of the Fifth Amendment, McCall's Complaint, liberally construed, seems to allege that the actions described above violated his due-process rights and his right against self-incrimination. See Compl., ¶ 27. To establish municipal liability under 42 U.S.C. § 1983 for a city like the District, however, a plaintiff must demonstrate that a governmental policy or custom caused the deprivation of his constitutional rights. See Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 694 (1978). In other words, a governmental entity cannot simply be held liable on a *respondeat superior* theory for an injury inflicted by its employees or agents. Id. at 691, 694.

The D.C. Circuit has identified several ways in which a policy or custom can be set:

> [T]he explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations.

Baker v. District of Columbia, 326 F.3d 1302, 1306–07 (D.C. Cir. 2003) (internal citations and quotation marks omitted).

To begin, it is a stretch under the circumstances alleged here to suggest that the District's actions somehow induced McCall to incriminate himself. As for his due-process rights, moreover, the Complaint does not allege that the DMV's unwillingness to provide a hearing

6

stemmed from some policy or custom, or that the agency failed to adequately train its employees in this regard or was otherwise deliberately indifferent. In addition, McCall never alleges any systematic keeping of incorrect records (either intentionally or not) by the District of Columbia. The city's alleged forgery and negligence with regard to his traffic tickets thus constitutes neither a specific policy or custom nor deliberate indifference. In fact, when McCall challenged his outstanding traffic violations, the DMV – in accordance with official policy – <u>cleared</u> his record of several violations and acknowledged its mistake as to those tickets. <u>See</u> DMV Tickets. As McCall has not sufficiently alleged facts to establish municipal liability under <u>Monell</u>, the Court will dismiss Count IV for failure to state a claim.

    D.  <u>State-Law Claims</u>

What remains of Plaintiff's Complaint with respect to the District of Columbia are the state-law negligence and fraud claims. This Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," <u>Fraternal Order of Police</u>, 185 F. Supp. 2d at 13, and that determination may occur *sua sponte* throughout the life of a lawsuit. In his Complaint, Plaintiff alleges alternative grounds for subject-matter jurisdiction – *i.e.*, diversity of citizenship and federal-question jurisdiction. <u>See</u> Compl., ¶¶ 1-2.

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity between parties. <u>See</u> <u>Prakash v. Am. Univ.</u>, 727 F.2d 1174, 1178 n.25 (D.C. Cir. 1984). That does not exist for actions against a state. <u>See</u> <u>Moor v. Cty. of Alameda</u>, 411 U.S. 693, 717 (1973) ("A State is not a 'citizen' for purposes of diversity jurisdiction."). As the District of Columbia is defined as a "state" for diversity purposes, <u>see</u> 28 U.S.C. § 1332(e), McCall's suit cannot rely on this basis of jurisdiction.

As for federal-question jurisdiction, the Court, at the inception of this case, had supplemental jurisdiction over the state-law claims because they arose from the same case or controversy as Plaintiff's federal claims, over which the Court had original jurisdiction. See 28 U.S.C. § 1367(a). Where, as here, the Court dismisses the federal claims, it may decline to exercise supplemental jurisdiction over the remaining state-law counts. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (supplemental jurisdiction, otherwise known as pendent jurisdiction, is "doctrine of discretion, not of plaintiff's right"), quoted in Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005); see also 28 U.S.C. § 1367(c)(3); Trimble v. District of Columbia, 779 F. Supp. 2d 54, 60 (D.D.C. 2011) (declining to exercise supplemental jurisdiction when all federal-law claims had been dismissed).

In deciding whether to exercise its jurisdiction over supplemental claims, federal courts should consider "judicial economy, convenience and fairness to litigants." United Mine Workers, 383 U.S. at 726. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding discretion set out in Carnegie–Mellon Univ. "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

Here, the factors weigh against retention of the case. Plaintiff's only federal claims are being dismissed, this case has not progressed in federal court past Defendants' initial Motion, and the Court has developed no familiarity with the additional issues presented. Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378-79 (D.C. Cir. 2010) (holding that district court

8

appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case) (citation omitted). A dismissal here, furthermore, will not prejudice Plaintiff if he chooses to refile in state court. Section 1367(d) tolls the limitations period while a claim is pending in federal court and provides for a 30-day grace period after it is dismissed so that the complainant can refile in state court should that be appropriate. The District of Columbia Court of Appeals has acknowledged this practice and allows "litigants to re-file claims that otherwise would have become barred in Superior Court." Artis v. District of Columbia, 135 A.3d 334, 339 (D.C. 2016). As this Court declines to extend supplemental jurisdiction over Plaintiff's state-law claims, it must dismiss Counts I and II for lack of subject-matter jurisdiction. He may refile in Superior Court if he so chooses.

## IV. Conclusion

For the aforementioned reasons, the District of Columbia's Motion to Dismiss will be granted. An Order to this effect will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: October 26, 2017